IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.Q. and S.B., individually and on behalf of I.Q., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 14-7814 (JBS/JS) |
| v. | |
| WASHINGTON TOWNSHIP SCHOOL DISTRICT, | **OPINION** |
| Defendant. | |

APPEARANCES:

Amelia Carolla, Esq.
FREEMAN CAROLLA REISMAN & GRAN LLC
19 Chestnut Street
Haddonfield, NJ 08033
    Attorney for Plaintiffs J.Q. and S.B.

William S. Donio, Esq.
COOPER LEVINSON, P.A.
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401
    Attorney for Defendant Washington Township School District

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

     This matter comes before the Court on Defendant Washington Township School District's ("Defendant" or "the District") motion to dismiss for lack of subject matter jurisdiction based on Plaintiffs' purported failure to exhaust administrative remedies. [Docket Item 8.] In this action, Plaintiffs J.Q. and

S.B., individually and on behalf of their daughter, I.Q. (collectively, "Plaintiffs"), allege that Defendant discriminated against their 13 year-old daughter, an eighth grade student with Attention Deficit Hyperactivity Disorder ("ADHD"), on the basis of disability by failing to provide a Section 504 plan in violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the New Jersey Law Against Discrimination ("NJLAD"). Defendant argues that the exhaustion requirement under the Individuals with Disabilities Act ("IDEA") applies to Plaintiffs' claims even though they do not assert a cause of action under the IDEA. Because Plaintiffs concede that they failed to exhaust the IDEA's administrative remedies, Defendant's motion turns on whether Plaintiffs seek relief which is available under the IDEA and whether the IDEA's exhaustion requirements apply to their non-IDEA claims. For the reasons discussed below, the Court will grant Defendant's motion to dismiss on exhaustion grounds.

## II.  BACKGROUND

### A. Facts

The Court accepts as true the following facts from Plaintiffs' Complaint for the purposes of the instant motion to dismiss. I.Q. is a 13 year-old eighth grade student in the Washington Township School District. (Compl. [Docket Item 1] ¶

2

12.) I.Q. was diagnosed with ADHD in April, 2011. (Id. ¶ 13.) ADHD is an impairment which causes I.Q. to have "difficulty concentrating, paying attention, thinking clearly, focusing, staying organized, keeping track of things and remembering to complete her work, to bring her completed work to school, and to finish her work." (Id.)

During the 2012-2013 school year, when I.Q. was in sixth grade, Plaintiffs requested that the District conduct an evaluation of I.Q.'s alleged disability. (Id. ¶ 14.) The District did not conduct a "full child team evaluation" as requested. (Id. ¶ 15.) Instead, the District determined that I.Q.'s needs could be met through an Intervention and Referral Service Plan ("I&RS Plan") – a state program for students who are "experiencing learning, behavior or health difficulties and to assist staff who have difficulties in addressing pupils' learning, behavior or health issues." (Id. ¶ 16.) The I&RS Plan recognized I.Q.'s need for assistance with organization and late or missing work. (Id. ¶ 17.) The Plan granted certain accommodations like permitting I.Q. to return to her locker to retrieve missed work, use a binder to help with organization, and use an assignment book signed by teachers. (Id.)

Despite these accommodations, I.Q. continued to struggle in school and some teachers did not follow the I&RS Plan. (Id. ¶ 19.) I.Q.'s grades were reduced if she did not turn in work on

3

time. (Id. ¶ 18.) I.Q.'s teachers informed Plaintiffs that I.Q. was "having trouble staying on task and on topic during class." (Id. ¶ 21.)

During the 2013-2014 school year, when I.Q. was in seventh grade, her difficulties with organization and attention continued. (Id. ¶ 22.) On September 22, 2014, Plaintiffs again requested that the District "evaluate [I.Q.] in areas of suspected disability to determine her eligibility for services by a [sic] way of a 504 Plan." (Id. ¶ 24.) On October 8, 2014, Plaintiffs attended a meeting with the District, but the necessary staff was not present to determine I.Q.'s need for a Section 504 Plan. (Id. ¶ 25.) The District declined to conduct an evaluation, finding that I.Q.'s grades were good and she could not have a disability. (Id.) A teacher at the meeting stated that in her 25 years of experience, she had not encountered a student with ADHD who needed accommodations. (Id.)

After the District declined Plaintiffs' request for an evaluation, Plaintiffs engaged a neuropsychologist, Dr. Sarah Allen Levin, to evaluate I.Q. (Id. ¶ 26.) Dr. Levin found that I.Q. has "difficulty organizing her materials[] and regulating her emotions." (Id.) I.Q's "scores in the areas of working memory represented a relative weakness in her cognitive profile," which combined with her ADHD, negatively impacted her ability to learn. (Id.) Dr. Levin recommended that I.Q. be

4

provided a Section 504 Plan, including but not limited to, the following accommodations: permit I.Q. to have objects to manipulate to increase her attention; grant I.Q. additional time to submit homework assignments; assist I.Q. with organizational skills; develop a plan for I.Q. to receive feedback from her teachers regarding her organizational skills; and formulate and monitor a plan to help I.Q. remember her homework assignments. (Id.) I.Q.'s parents provided the District with a copy of Dr. Levin's evaluation on November 18, 2014 and again requested a Section 504 Plan. (Id. ¶ 27.)

On December 8, 2014, Plaintiffs met with the District to discuss I.Q.'s eligibility for a Section 504 Plan. (Id. ¶ 28.) Plaintiffs allege that the District decided to decline I.Q. a Section 504 Plan even before the meeting began. (Id.) Most of the attendees at the meeting had not been provided and had not read Dr. Levin's evaluation. (Id.) The only teacher in attendance noted I.Q.'s difficulties with organization which resulted in "significantly lower" grades. (Id.) The District determined that I.Q. did not need a Section 504 Plan because her medications were working and her grades were high. (Id.)

Plaintiffs allege that, to date, the District has not provided I.Q. the accommodations she needs to access her education. (Id.)

**B. Procedural history**

Plaintiffs filed this action on December 15, 2014 asserting claims against the District for violations of the ADA, Section 504, and the NJLAD. Plaintiffs seek compensatory education and compensatory damages and an order directing the District to provide I.Q. with a Section 504 plan. Plaintiffs also seek expert and attorney's fees. Defendant filed the instant motion to dismiss on January 22, 2015. [Docket Item 8.] Plaintiffs filed opposition [Docket Item 10] and Defendant filed a reply [Docket Item 11].

**III. STANDARD OF REVIEW**

Under Rule 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). The Third Circuit has identified two types of challenges to the court's jurisdiction under Rule 12(b)(1): 1) facial challenges which are based on the legal sufficiency of the claim as pleaded on the face of the complaint, and 2) factual challenges which are based on the sufficiency of jurisdictional facts. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). An attack on subject matter jurisdiction that is based on a lack of administrative exhaustion is a factual challenge, not a facial one. See e.g., Eladawey v. Fed. R.R. Admin., Civ. 13-2976 (ES), 2014 WL 4610644, at *2 (D.N.J. Sept. 12, 2014); J.H. ex rel.

J.H. v. Egg Harbor Twp. Bd. of Educ., Civ. 08-488 (JBS), 2009 WL
1322514, at *2 (D.N.J. May 11, 2009).

"In reviewing a factual attack [as here] the court may
consider evidence outside the pleadings." Gould Elec. Inc. v.
United States, 220 F.3d 169, 176 (3d Cir. 2000). "In such a
situation, 'no presumptive truthfulness attaches to plaintiff's
allegations, and the existence of disputed material facts will
not preclude the trial court from evaluating for itself the
merits of jurisdictional claims.'" Carpet Group Int'l v.
Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir.
2000) (quoting Mortensen, 549 F.2d at 891). "[T]he burden of
proving that jurisdiction exists lies with the plaintiff, and
'the trial court is free to weigh the evidence and satisfy
itself as to the existence of its power to hear the case.'"
Harris v. Kellogg Brown & Root Servs., Inc., 724 F.3d 458, 464
(3d Cir. 2013), cert. denied, No. 13-817, 2015 WL 231966 (U.S.
Jan. 20, 2015) (quoting Mortensen, 549 F.2d at 891).

**IV.  DISCUSSION**

Defendant argues that this Court lacks subject matter
jurisdiction over Plaintiffs' claims because they have failed to
exhaust administrative remedies as required under the IDEA.
Although Plaintiffs do not assert claims under the IDEA,
Defendant nevertheless contends that the IDEA's exhaustion
requirement applies because Plaintiffs seek relief which is

available under the IDEA, as established by the plain language of the IDEA and binding precedent. Plaintiffs contend in response that the IDEA's exhaustion requirement does not apply because they do not and could not seek relief under the IDEA. Plaintiffs maintain that I.Q. is not disabled and not entitled to special education services under the IDEA as required to be eligible for relief thereunder. In reply, Defendant argues that the IDEA's exhaustion requirement is triggered by the nature of Plaintiffs' claims and the relief sought irrespective of eligibility under the IDEA.

### A.  Plaintiffs could have asserted claims under the IDEA

Because determining whether Plaintiffs' claims are subject to the IDEA's exhaustion requirement turns on whether Plaintiffs could have asserted claims under the IDEA, the Court begins with Plaintiffs' argument that I.Q. is not eligible for relief under the IDEA.

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271 (3d Cir. 2014) (quoting 20 U.S.C. § 1400(d)(1)(A)). "An Individualized Education Program (IEP) is the primary vehicle for providing students with the required free and appropriate education." S.H. v. State-Operated

<u>Sch. Dist. of City of Newark</u>, 336 F.3d 260, 264 (3d Cir. 2003).

The IDEA defines "child with a disability" as follows:

> a child with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (or referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, **other health impairments**, or specific learning disabilities; and who by reason thereof needs special education and related services.

20 U.S.C. § 1401(3)(A) (emphasis added). The IDEA defines

"other health impairments" as

> having limited strength, vitality or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that-(i) [i]s due to chronic or acute health problems, including but not limited to a heart condition, tuberculosis, rheumatic fever, nephritis, asthma, sickle cell anemia, hemophilia, epilepsy, lead poisoning, leukemia, diabetes, **attention deficit disorder or attention deficit hyperactivity disorder** or Tourette syndrome; and [a]dversely affects a student's educational performance.

34 C.F.R. § 300.8(c)(9)(i)-(ii) (emphasis added). The

protections of the IDEA are not limited to students with

intellectual or learning disabilities and "expressly includes

health impairments that limit a student's ability to attend

regular classes and which adversely affect his or her

educational performance." <u>A.D. v. Haddon Heights Bd. of Educ.</u>,

Civ. 14-1880 (JBS), 2015 WL 892643, at *9 (D.N.J. Mar. 2, 2015).

Notably, "other health impairments" is explicitly defined under

the IDEA to include "attention deficit disorder or attention

deficit hyperactivity disorder," the principal disabling condition identified in Plaintiffs' Complaint.

Moreover, "special education" under the IDEA "means specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29). The Third Circuit has noted that the IDEA is written in the conjunctive and coverage thereunder requires a showing that a student is 1) a child with a disability **and** 2) needs special education and related services. D.S. v. Neptune Twp. Bd. of Educ., 264 F. App'x 186, 189 (3d Cir. 2008) ("Written in the conjunctive, the statute should not be read to protect children with an impairment but not requiring special education."). However, "there is no precise standard for determining whether a student is in need of special education, and well-settled precedent counsels against invoking any bright-line rules for making such a determination." W. Chester Area Sch. Dist. v. Bruce C., 194 F. Supp. 2d 417, 420 (E.D. Pa. 2002).

Here, the present record supports a finding that I.Q. is potentially eligible for coverage under the IDEA and thus could have, as a threshold matter, asserted claims under the IDEA. As alleged in the Complaint, I.Q. suffers from ADHD, a condition

10

expressly defined as an "other health impairment" under the IDEA, which Plaintiffs contend "substantially affects and limits her learning and other major life activities." (Compl. ¶ 13.) As a result of her ADHD, Plaintiffs allege that I.Q. "has difficulty concentrating, paying attention, thinking clearly, focusing, staying organized, keeping track of things and remembering to complete her work, to bring her completed work to school, and to finish her work." (Id.) I.Q.'s ADHD is "significant and debilitating." (Id.) The I&RS Plan designed for I.Q. permitted her to "return to her locker to gather missed work, use of a binder and homework folders to help with organization, and an assignment book signed by teachers." (Id. ¶ 17.) Plaintiffs assert that despite the I&RS Plan, I.Q. continued to struggle in school. (Id. ¶ 19.) Dr. Levin, the neuropsychologist retained by Plaintiffs, concluded that deficits in I.Q.'s "working memory" coupled with her ADHD "negatively impacted her ability to learn at school." (Id. ¶ 26.) Dr. Levin then proposed a series of accommodations to improve I.Q.'s learning and educational performance. (Id.) Accordingly, Plaintiffs' allegations suggest satisfaction of both statutory prerequisites for coverage under the IDEA.[1] See

---

[1] I.Q.'s alleged need for help maintaining concentration, additional time to complete assignments, assistance to improve her organizational skills, and a special system to track her homework assignments plausibly constitutes "special education

11

Hansen ex rel. J.H. v. Republic R-III Sch. Dist., 632 F.3d 1024, 1028 (8th Cir. 2011) (finding that student met statutory definition of "child with a disability" under the IDEA based on hyperactive, impulsive, and inattentive behavior which "severely impaired his ability to learn").

Because Plaintiffs have not asserted an IDEA claim and the question has not been otherwise presented at this stage, the Court makes no finding as to the merits of any IDEA or IDEA-related claim. The Court, in concluding that Plaintiffs' allegations potentially implicate the protections under the IDEA, merely rejects Plaintiffs' argument that the IDEA is inapplicable to this action due to the nature of I.Q.'s conditions and the services sought. See Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (noting that plaintiffs are barred "from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA").

---

and related services" under the IDEA. Plaintiffs' argument to the contrary is unpersuasive in light of the expansive definition of such services under the IDEA. Further, the fact that Plaintiffs did not request services under the IDEA is irrelevant to whether I.Q. could be considered a child with a disability "who by reason thereof needs special education and related services." 20 U.S.C. § 1401(3)(A).

The cases upon which Plaintiffs rely in support of their contention that exhaustion is only required where the student is eligible for relief under both Section 504 and the IDEA are inapposite and distinguishable. See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 257-58 (3d Cir. 2013) (concluding that IDEA's reference to "child with a disability" does not include children who are mistakenly identified as disabled and upholding district court's dismissal of IDEA claim); Alboniga v. Sch. Bd. of Broward County Fla., 2015 U.S. Dist. LEXIS 15832, at *19 (S.D. Fla. Feb. 10, 2015) (finding that exhaustion was not required where plaintiff's ADA and Section 504 claims, based on school's failure to include use of a service animal in student's IEP, were not based on the denial of a free and appropriate public education, nor relevant to student's educational experience). Here, Plaintiffs do not assert that I.Q. was mistakenly identified as disabled. To the contrary, Plaintiffs assert that I.Q's disability is more severe and impactful on her education than acknowledged by Defendant, and Plaintiffs' claims are undeniably based on Defendant's alleged failure to provide a FAPE.[2] Critically, Plaintiffs have

---

[2] Plaintiffs' arguments that the eligibility criteria under Section 504 and the ADA are broader than that under the IDEA and that neither the Rehabilitation Act nor the ADA requires exhaustion, while accurate, are irrelevant to the Court's analysis in light of Batchelor. Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 274 (3d Cir. 2014) ("Appellants'

identified no binding precedent suggesting that the IDEA's exhaustion requirement only applies to non-IDEA claims when a student has been found eligible for an IEP.

Further, many of the cases Plaintiffs cite followed administrative proceedings, which enabled the courts to rely on developed administrative records in their determination of plaintiffs' eligibility for relief under the IDEA. See Chelsea D. v. Avon Grove Sch. Dist., 2013 U.S. Dist. LEXIS 98125, at *24-35 (E.D. Pa. July 15, 2013) (relying on the findings of the

---

retaliation claims asserted under Section 504 of the Rehabilitation Act and ADA 'relate unmistakably' to the provision of a FAPE to [the student], and are thus subject to the IDEA's exhaustion requirement."). Additionally, this Court recently rejected the argument that the FAPE contemplated by the IDEA is in some way distinguishable from the FAPE contemplated by the Rehabilitation Act. See A.D. v. Haddon Heights Bd. of Educ., Civ. 14-1880 (JBS), 2015 WL 892643, at *10 (D.N.J. Mar. 2, 2015). Indeed, "there appears to be 'few differences, if any,' between the requirements imposed under Section 504 and those provided under the IDEA." T.F. v. Fox Chapel Area Sch. Dist., Civ. 12-1666, 2013 WL 5936411, at *9 n.4 (W.D. Pa. Nov.5, 2013) (quoting W.B. v. Matula, 67 F.3d 484, 492-93 (3d Cir. 1995)), aff'd, 2014 WL 4674635 (3d Cir. Sept. 22, 2014). Both statutes require consideration of whether the school district provided the education, services, and support necessary to accommodate the student's disabilities. See D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 n.8 (3d Cir. 2012) ("As we have explained, § 504's negative prohibition is similar to the IDEA's affirmative duty and . . . requires schools that receive federal financial assistance to provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction. As under the IDEA, providing a FAPE in accordance with § 504 requires a school district to reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits.") (internal quotations and citations omitted).

14

hearing officer regarding plaintiffs' alleged disabilities and
the need for special education services in evaluating
plaintiffs' IDEA claim); S.L. v. Downey Unified Sch. Dist., 2014
U.S. Dist. LEXIS 30814, at *19-20 n.2 (C.D. Cal. Mar. 10, 2014)
(noting that the school district "determined on multiple
occasions that Plaintiff does not qualify for special education
services under the IDEA" and that "prior administrative
proceedings" provided the district an opportunity to determine
whether plaintiff, a student with a seizure disorder which
caused her to miss significant class time, was qualified for
services under the IDEA); D.R. ex rel. Courtney R. v. Antelope
Valley Union High Sch. Dist., 746 F. Supp. 2d 1132, 1144-45
(C.D. Cal. 2010) (recognizing that plaintiff, a student with
impaired mobility due to Charcot-Marie-Tooth Disease, pursued
administrative remedies under the IDEA, albeit unsuccessfully,
before filing her claims in federal court and finding that
plaintiff was not a child with a disability as defined by the
IDEA and thus not required to exhaust administrative remedies to
assert claims under Section 504 and the ADA). There has been no
such administrative proceedings here and no determination by
Defendant that I.Q. is not eligible for services under the IDEA.
Unlike these cases, in the present action, the Court is unable
to conclude that I.Q. is not eligible for relief under the IDEA,

as Plaintiffs contend, especially in the absence of a more developed record.[3]

Therefore, the Court must consider whether the exhaustion requirements of the IDEA apply to Plaintiffs' non-IDEA claims.

### B.   Plaintiffs' claims are subject to the IDEA's exhaustion requirement

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust administrative remedies. Plaintiffs contend, in the Complaint and in opposition to the instant motion to dismiss, that they need not exhaust administrative remedies because Section 504 and the ADA do not require exhaustion unless an individual also asserts a claim under the IDEA, which Plaintiffs do not.

This Court recently addressed nearly identical arguments in A.D. v. Haddon Heights Bd. of Educ., Civ. 14-1880 (JBS), 2015 WL 892643 (D.N.J. Mar. 2, 2015), and will therefore rely on the applicable law as summarized therein.

> The IDEA requires, in relevant part, that states receiving federal funds "make available a FAPE to children with

---

[3] These cases also reinforce the policy considerations articulated by the Batchelor Court in support of applying the IDEA's exhaustion requirement to non-IDEA claims such as those in the instant action. See Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 275 (3d Cir. 2014) ("Exhaustion serves the purpose of developing the record for review on appeal, encouraging parents and the local school district to work together to formulate an IEP for a child's education, and allowing the education agencies to apply their expertise and correct their own errors.") (internal citations and parentheticals omitted).

disabilities" and "implement specified procedural safeguards to ensure children with disabilities and their parents" receive due process. Batchelor, 759 F.3d at 272. These safeguards, collectively known as the IDEA's administrative remedies, provide "an elaborate procedural mechanism," which includes "a due process hearing before an administrative official." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994); 20 U.S.C. § 1415(f).

Congress required plaintiffs to complete the administrative process prior to resorting to federal court, "because allowing a 'claim without requiring exhaustion . . . would not only 'render superfluous most of the detailed procedural protections outlined in the statute, but, . . . would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.'" M.G. ex rel. LG v. Caldwell-West Caldwell Bd. of Educ., 804 F. Supp. 2d 305, 313 (D.N.J. 2011) (quoting Komninos, 13 F.3d at 778 (quoting Smith v. Robinson, 468 U.S. 992, 1011–12 (1984))). Exhaustion further affords the education agencies an opportunity "to apply their expertise and correct their own mistakes." Woodruff v. Hamilton Twp. Pub. Sch., 305 F. App'x 833, 837 (3d Cir. 2009) (citing McKart v. U.S., 395 U.S. 185, 194–95 (1969)).

Consequently, parties may only commence a civil action in district court following "the findings and decision" of an administrative hearing. 20 U.S.C. § 1415(i)(2)(C)(i)–(iii). At that time, the reviewing court may grant "such relief as [it] determines appropriate," see id., including "attorneys' fees, reimbursement for a private educational placement, and compensatory education." Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 185 (3d Cir. 2009) (internal quotation marks omitted).

A.D., 2015 WL 892643, at *10–11.

Although Plaintiffs here do not assert a claim under the IDEA, the Third Circuit in Batchelor, found that "[e]xhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be

17

obtained under the IDEA." <u>Batchelor</u>, 759 F.3d at 272.

Importantly, Section 1415(l) of the IDEA contains the following rule of construction:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.**

20 U.S.C. § 1415(l) (emphasis added). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute— *e.g.,* section 1983, section 504 of the Rehabilitation Act, or the ADA." <u>Batchelor</u>, 759 F.3d at 272 (quoting <u>Jeremy H. v. Mount Lebanon Sch. Dist.</u>, 95 F.3d 272, 281 (3d Cir. 1996)); <u>see</u> <u>also</u> <u>Hornstine v. Twp. Of Moorestown</u>, 263 F. Supp. 2d 887, 901–02 (D.N.J. 2003) ("[I]n cases in which it appears that a plaintiff has cloaked an IDEA claim as an ADA, Rehabilitation Act, or Section 1983 action in an effort to avoid application of the IDEA's distinct exhaustion requirement, courts will require that plaintiff to [sic] exhaust the state administrative remedies mandated for IDEA claims.").

18

As noted by the Court of Appeals in Batchelor, determining whether the IDEA's administrative process must be exhausted before bringing claims in federal court turns on "whether the parties could have asserted the claims under the IDEA" and "whether the claim could have been remedied by the IDEA's administrative process." Batchelor, 759 F.3d at 273. "In other words, claims under Section 504, the ADA, Section 1983, or any state analogue, will require exhaustion, if such claims seek relief 'available under the IDEA.'" A.D., 2015 WL 892643, at *11 (quoting Id.).

This Court again finds the Third Circuit's decision in Bachelor instructive.

> In Batchelor, the plaintiffs, a mother and son, filed suit against the school district, primarily alleging that the school district retaliated against them "'for their advocacy with respect to [the son's] legally protected right'" to a FAPE. Id. at 270, 274 (citation omitted). The plaintiffs specifically asserted three claims: retaliation and failure to provide a FAPE under the IDEA; retaliation in violation of Section 504; and retaliation in violation of the ADA. Id. at 270. The plaintiffs argued, as here, that they need not exhaust administrative remedies with regard to their Section 504 and ADA claims. Id.
>
> Upon review of the plain language of the statute-which "affords parents of a disabled child the opportunity to present a complaint 'with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child'"-the Court of Appeals, however, found "a logical path to be drawn" from the claims of retaliation to the school district's failure to provide, and plaintiffs' efforts to obtain, "'a free appropriate public education.'" Id. at 274-75 (emphasis in original). Because of the "'unmistakabl[e]'" relationship between the retaliation

19

claims and the provision of a FAPE under 20 U.S.C. § 1415(b)(6), the <u>Batchelor</u> court concluded that such claims must be exhausted under the IDEA. <u>Id.</u> at 274–76.

In the wake of <u>Batchelor</u>, district courts throughout this Circuit have found non-IDEA actions subject to IDEA exhaustion requirements, where the asserted claims bear relation to the IDEA's guarantee of a FAPE. <u>See, e.g.</u>, <u>M.S. ex rel. Shihadeh</u>, ––– F.Supp.3d –––, 2015 WL 70920, at *4–5 (finding in a non-IDEA action that, under <u>Batchelor</u>, the plaintiffs' ADA and Section 504 claims required IDEA exhaustion); <u>S.B. v. Trenton Bd. of Educ.</u>, Civ. 13-0949, 2014 WL 5089716, at *5 (D.N.J. Oct. 9, 2014) (finding in a non-IDEA action that, under <u>Batchelor</u>, the plaintiffs' claims under the ADA, the RA, and the New Jersey Special Education Statute, required IDEA exhaustion).

<u>A.D.</u>, 2015 WL 892643, at *12.

In the present action, as in <u>Batchelor</u> and <u>A.D.</u>, Plaintiffs' claims "palpably relate" to whether Defendant provided I.Q. a FAPE – the principal protection guaranteed by the IDEA. <u>Batchelor</u>, 759 F.3d at 274. Central to Plaintiffs' Complaint are allegations regarding the appropriateness of the education provided I.Q. given her alleged disabilities. As alleged, Plaintiffs first approached Defendant during the 2012-2013 school year "due to concerns about how I.Q.'s disability was affecting her learning and thinking at school and elsewhere." (Compl. ¶ 14.) Plaintiffs contend that, despite being provided with accommodations through an I&RS Plan, I.Q. continued to struggle in school, yet Defendant "refused to acknowledge that ADHD is a disability that is valid, real and affects I.Q.'s learning." (<u>Id.</u> ¶ 19.) Unsatisfied with

20

Defendant's response to Plaintiffs' request for further evaluation and services, Plaintiffs hired Dr. Levin to "determine what services [I.Q.] would need to alleviate her difficulties in school." (Id. ¶ 26.) Dr. Levin's suggested accommodations all relate to I.Q.'s education and her ability to learn. Plaintiffs assert that "[t]o date, I.Q. has not been afforded accommodations and modifications she needs to access her education." (Id. ¶ 28.)

Although Plaintiffs' claims are artfully framed as discrimination claims, in essence they concern whether I.Q. is a student with a disability and whether Defendant acted appropriately in response to Plaintiffs' request for accommodations to ensure I.Q.'s right to a FAPE. Such claims clearly relate to Defendant's obligation to provide a FAPE. As such, Plaintiffs here aim to accomplish what the plain language of the IDEA expressly prohibits, namely the circumvention of the IDEA's exhaustion requirements by "repacking claims that could have been brought under the IDEA and repacking them as claims under some other statute." Batchelor, 759 F.3d at 272. The Court of Appeals in Batchelor roundly rejected a similar attempt at circumvention. Because the Court finds, at this stage, that Plaintiffs conceivably could have asserted the claims under the IDEA based on harm which could have been remedied by the IDEA's administrative process, Plaintiffs are required to have

exhausted the IDEA's administrative remedies, which they undisputedly have not. Consequently, the Court must consider whether any exception to the IDEA's exhaustion requirement applies.

### C.   No exception to the IDEA's exhaustion requirement applies

Defendant properly notes that no exception to the IDEA's exhaustion requirement applies here.

"Plaintiffs need not comply with the IDEA's exhaustion requirements if 'exhaustion would be futile or inadequate,' if 'the issue presented is purely a legal question,' or if 'the administrative agency cannot grant relief.'" A.D., 2015 WL 892643, at *14 (quoting Komninos, 13 F.3d at 778). Although Plaintiffs seek compensatory damages in the instant action, which "are not available under the IDEA and cannot be awarded in the context of a Due Process hearing," Batchelor, 759 F.3d at 276, as in Batchelor, it would be untenable to argue that all of the remedies Plaintiffs seek are unavailable under the IDEA. Id. Plaintiffs also seek compensatory education, an order compelling Defendant to provide I.Q. with an appropriate Section 504 Plan, expert fees, counsel fees and costs, and "any other relief this Court should deem proper and just." (Compl. at 11.) In fact, Plaintiffs' demand for monetary damages is explicitly premised

on damage due to Defendant's failure to provide I.Q. with the educational accommodations sought.

Moreover, the court "is not constrained in the relief it is authorized to grant by the remedies sought" in Plaintiffs' Complaint. Batchelor, 759 F.3d at 276. Instead, "'the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply.'" Id. (quoting Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 992 (7th Cir. 1996)). Accordingly, the Court of Appeals in Batchelor expressly rejected the argument that plaintiffs were exempt from the IDEA's exhaustion requirement because they demanded monetary damages in addition to other forms of relief. Id.

Plaintiffs do not and cannot argue that any of the other exceptions to the IDEA's exhaustion requirement as discussed by the Batchelor Court apply to this action. The "implementation exception" does not apply because Plaintiffs do not challenge the implementation of an IEP. Plaintiffs, instead, assert substantive claims for failure to provide a FAPE. Id. at 280. As in Batchelor, the futility exception is inapplicable because Plaintiffs have not previously exhausted the administrative process under the IDEA and the factual record is not fully developed. Accordingly, the IDEA's administrative process remains available to remedy the alleged harms. Id. (observing

23

that district courts in this district have applied the futility exception "where the plaintiff had previously exhausted administrative remedies, and where the factual record was sufficiently developed," but declining to excuse exhaustion in the absence of prior administrative proceedings).

## V.   CONCLUSION

In light of the foregoing, the Court concludes that Plaintiffs' claims require exhaustion of the IDEA's administrative process and that no exception to the exhaustion requirement applies. Therefore, the Court will grant Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court will dismiss Plaintiffs' Complaint in its entirety without prejudice.[4] See Id. at 281 (dismissing complaint for lack of subject matter jurisdiction where plaintiffs failed to exhaust the IDEA's administrative process and failed to demonstrate application of an exception); M.A. v. Jersey City Bd. of Educ., --- F. App'x ---, 2014 WL 6656328, at *5 (3d Cir. Nov. 24, 2014) (same). An accompanying Order will be entered.

| | |
|---|---|
| **March 13, 2015** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[4] Having dismissed Plaintiffs' federal claims without prejudice, the Court declines to exercise supplemental jurisdiction over their corresponding state law claim. See 28 U.S.C. § 1367(c)(3); A.D. v. Haddon Heights Bd. of Educ., Civ. 14-1880 (JBS), 2015 WL 892643, at *15 n.17 (D.N.J. Mar. 2, 2015); R.S. v. Glen Rock Bd. of Educ., Civ. 14-0024 (SRC), 2014 WL 7331954, at *6 (D.N.J. Dec. 19, 2014).